UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HENRY JAMES** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-7614** |
| **RONALD BRANCH, BOBBI JO BRELAND, RANDALL WHALEY, BRANDON BROOM, WAYNE KENNEDY, MCNEESE, KNIGHT, ROBERT TANNER, BRENT BRUMFIELD, KEITH SUMRALL, WALTER MILLER, TOMMY ERWIN, RICHARD STALDER, MOODY, MORRIS, WILLIAMS, JIM ROGERS, HARRY POWELL, KEITH BICKHAM, TULLOS, JEFFREY E. TRAVIS, STRINGER, LARRY GROW** | **SECTION "K"(4)** |

### REPORT AND RECOMMENDATION

Before the Court is a **Motion to Dismiss (Rec. Doc. No. 60)** filed by the defendants, Ronald Branch, Bobbi Jo Breland, Randall Whaley, Brandon Broom, Wayne Kennedy, Duane McNeese, Robert Tanner, Brent Brumfield, Keith Sumrall, Walter Miller, Tommy Erwin, former Department of Corrections Secretary Richard Stalder, Lieutenant Trey Moody, CSM Charlie Morris, Lieutenant Delos Williams, Jim Rogers, Harry Powell, Assistant Warden Keith Bickham, Lieutenant John Tullos, Chief Jeffrey Travis, Sergeant Stringer, and Larry Grow, seeking dismissal of the plaintiff, Henry James's complaint as frivolous, prescribed, and otherwise for failure to state a claim for which relief can be granted. The motions, along with the entire matter, was referred to the United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary and submit

proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(B) and (C) and 28 U.S.C. § 1915(e)(2)**. Upon review of the record, the Court has determined that the pending motion can be disposed of without an evidentiary hearing.

I.     **Factual Summary**

The plaintiff, Henry James ("James"), filed this *pro se* and *in forma pauperis* complaint pursuant to Title 42 U.S.C. § 1983. James was previously incarcerated in the B.B. "Sixty" Rayburn Correctional Center ("RCC") in Angie, Louisiana, during the events of which he complains and he had been released prior to the filing of this complaint. He named as defendants the 22 correctional officers from RCC, listed as movants above, and former Secretary Richard Stalder of the Louisiana Department of Corrections, each in his individual and official capacity. The Court has already dismissed another defendant, Master Sergeant Knight, for James's failure to comply with Fed. R. Civ. P. 4(m).[1]

James alleges that while he was in RCC, he suffered racial harassment, including racial slurs, cruel and unusual punishment, retaliation for and hindrance in the exercise of his constitutional rights to file lawsuits, and the denial of access to legal supplies as an indigent. He alleges these things to have occurred in connection with his placement in the prison, his work assignment, and his living conditions, as set forth in more detail in the following events outlined in his Complaint (Rec. Doc. No. 3) and the Amended Complaint (Rec. Doc. No. 62).

James alleges that, on November 4, 2005, he was housed at the C. Paul Phelps Correctional Center where he was falsely accused in a disciplinary report in retaliation because he filed grievances and lawsuits. As a result, he was placed in a maximum security cell. He was eventually

---

[1]Rec. Doc. No. 64.

transferred to RCC on November 21, 2005, where he suffered the alleged violations of his federal constitutional rights.

On January 19, 2006, he appeared before a cellblock review board. Based on his prior criminal history, he was denied permission to be released from the disciplinary cellblock. James filed grievance complaint No. WCI-2006-52 on January 23, 2006, against Branch and Breland for using his criminal history against him in the review, and his complaint was denied.

He also claims that on January 26, 2006, Sergeant Whaley ordered him out of the shower after only eight minutes, when white inmates were allowed twenty minutes. He also claims that he filed grievance complaint No. WCI-06-74, on February 1, 2006, about this favoritism and discrimination. His complaint was denied.

James also alleges that, in January 2006, Master Sergeant Keith Sumrall almost ran over him with a horse and threatened to stomp him and another inmate. James filed a grievance complaint, No. WCI-06-140, about this incident, and the complaint was denied.

On February 14, 2006, Master Sergeant Morris allegedly yelled at James and falsely accused him of not working. He ordered James to get on his knees and "goose pick" around the flower bed for forty-five minutes. This caused him to get splinters in his left fingers, pain in his knees and foot arches. James noticed that white inmates were standing around and not working and they were not reprimanded. He filed a grievance complaint about these "sensitive issues" to Secretary Stalder, who denied the complaint. He then filed a grievance complaint with Warden Travis in No. WCI-06-204, and it too was denied.

On February 16, 2006, James and another inmate were required to use swing-blades to cut grass in a small enclosed work space with eighty-nine inmates working. James claims that he and

other inmates collided blades occasionally. He further alleges that Master Sergeant Brumfield constantly yelled for the inmates to keep working in this unsafe place and played "homosexual games," telling the men to hold hands with their partners. James filed a grievance complaint, No. WCI-06-173, which was addressed by Captain Tommy Erwin, but James claims that nothing was done to curb the pattern of physical and mental abuse.

James also alleges that on February 21, 2006, Master Sergeant Kennedy cursed him using racial slurs and complained about the quality of his work. This occurred while other inmates nearby were not working at all. He filed a grievance complaint, No. WCI-06-182, against Kennedy for racial harassment on February 23, 2006. The complaint was denied.

On February 24, 2006, James mailed a letter to Major Larry Grow, the overseer of the law library, requesting seven days of library time to research and type his certificate of appealability for the United States Fifth Circuit Court of Appeals. James did not receive a response. On March 1, 2006, he mailed a second letter to Grow requesting the time to conduct research in connection with his legal briefs, noting the forty day deadline he faced, and asking to be screened as inmate counsel.

After he received no response, on March 6, 2006, he mailed Secretary Stalder an informal letter complaining about Major Grow. He mailed a similar letter to Warden Rogers on March 9, 2006. On March 13, 2006, James received a letter from Grow indicating that they do not provide library time to inmates. James alleges that as a result of not having library time, his briefs were rejected by the United States Fifth Circuit. James claims that the inmate counsel told him that he could not spend too much time assisting James because he was assigned to help over 260 other inmates.

In the meantime, on February 27, 2006, Master Sergeant Walter Miller, acting on the orders of Lieutenant Moody and Major Branch, ordered James and others on to their knees to "goose-pick" the garden. This caused James to suffer back and knee pain. His grievance complaint, No. WCI-06-197 was denied by Major Branch.

James alleges that on March 9, 2006, Cadet Broom conducted an unexpected search of James's cell. James claims that he informed Broom that Broom had just searched his cell on March 5, 2006. James mailed grievance complaint No. WCI-06-74 on March 10, 2006, to Warden Rogers complaining that Broom was conducting harassing shakedowns in retaliation for the prior grievance James filed against Whaley. Nothing was done to correct Broom's behavior.

On March 15, 2006, Master Sergeant Kennedy allegedly had James sent back to the dorm and would not allow him to eat dinner until after the inmates in the last dorm had eaten. That same day, Kennedy denied James legal assistance by ordering him to leave the Wind Yard law library. James mailed grievance complaint No. WCI-06-247 to Warden Rogers on March 16, 2006, complaining about harassment and retaliation by Master Sergeant Kennedy. The complaint was denied.

James also alleges that on March 20, 2006, Lieutenant Williams ordered James and others to "goose-pick" the Wind Yard in the rain with a muddy ground. Williams also stopped another guard from letting the inmates into the dorm. James filed a grievance complaint, No. WCI-06-257, with Warden Rogers, and it was denied.

On March 30, 2006, Cadet McNeese, acting on orders from Master Sergeant W. Kennedy, searched James's cell. James alleges that McNeese ransacked his clothes and food and wrinkled his

legal papers. According to James, McNeese refused to give James his name and turned his name tag backwards.

Later that day, James requested medical care for his back, knees, and arches caused by the "goose picking." He was seen by medical personnel and charged for the visit. His request for a duty status prohibiting assignment to goose-picking was denied.

The next day, March 31, 2006, James obtained McNeese's name and mailed grievance complaint No. WCI-06-294 complaining of harassment. The complaint was denied and nothing was done to correct the behavior.

Another search was conducted that day by Cadet Broom, acting on orders of Warden Rogers. James filed a grievance complaint, No. WCI-06-295, complaining of retaliation by Broom and Rogers for exercising his constitutional rights. The complaint was denied.

On April 10, 2006, James mailed another letter to Secretary Stalder lodging another informal complaint about Major Grow's refusal to allow him library time to do his own research, use of a typewriter, and time to Shepardize his cases. James received a letter from Major Grow on April 20, 2006, advising James that he had no right to use a typewriter and that there was no such thing as a right to library time in the law office to research legal references.

On April 28, 2006, James was ordered by Master Sergeant Harry Powell to "goose pick" pebbles out of the Wind Yard baseball diamond. James claims that Powell constantly yelled at him saying "let's go horse," as a racial slur. He filed a racial harassment complaint against Powell in No. WCI-06-376. The complaint was denied and nothing was done.

James claims that on May 1, 2006, Sergeant Knight stared at him in an intimidating manner for almost an hour and also walked around harassing other black inmates. James claims that, while

the black inmates were working, the white inmates were standing around. He states that Sergeant Knight never told them to go back to work. As a result, the next day, he mailed another grievance complaint, No. WCI-06-377, to Warden Travis against Sergeant Knight. The complaint was denied.

On May 9, 2006, Master Sergeant W. Miller, allegedly yelled at James and other black inmates to keep up with the line of inmates walking to the work area. James tried to walk faster through the deep puddles of water. James tripped and sprained his wrist. He filed a complaint against Miller in No. WCI-06-397. His request for relief was denied.

On May 11, 2006, Master Sergeant Wayne Kennedy uttered a racial slur to James and other black inmates, stating "get to work boy." Kennedy stayed to watch James for twenty minutes and eventually ordered him off of the grass and to sit on the red dirt to goose-pick pebbles.

James claims that on May 15, 2006, while James was working on Wind Yard, Master Sergeant Kennedy went to where James was working and ordered him to get off of the grass and sit in the red dirt to goose-pick pebbles. Five minutes later, Kennedy and Sergeant Stringer threatened to lock James up for not moving fast enough. James claims that sitting in the red dirt for six hours a day caused him to suffer low back pain and buttocks pain.

He complained about both the May 11 and 15 incidents in grievance complaint No. WCI-06-409. He also mailed an informal complaint to Secretary Stalder against Warden Keith Bickham for allowing his subordinates to racially harass James and use cruel labor tactics. He also complained about the pain he endured from sitting on the red dirt. He also informed Stalder of an incident on May 16, 2006, when he was denied a tool and ordered to goose-pick the grass out of the potato patch and another incident on May 18, 2006, when Captain Erwin sent him to the parking lot in front of the prison to goose-pick the grass in the cracks of the concrete while on his knees. On June 1, 2006,

the complaint he sent to Secretary Stalder was responded to by Warden Travis stating that no comment was necessary.

In the meantime, on May 22, 2006, James mailed a letter to Classification Officer Breland requesting indigent legal supplies. After she did not respond, on June 5, 2006, he mailed a second letter to Breland. On June 11, 2006, he mentioned this to Secretary Stalder in a letter. On June 28, 2006, James spoke with Breland and she asked him to send another request. After he did not receive a response from her, on July 5, 2006, he sent a third letter to Breland. James alleges that Breland's delayed actions were taken in retaliation against him for filing grievance complaint No. WCI-06-52 in January 2006. He claims that the denial of legal supplies and library time by Breland and Grow caused him to lose two civil suits in federal court; Civ. Action No. 06-2730 and Civ. Action No. 06-4097.

James also alleges that on May 23, 2006, Lieutenant Tullos ordered James and other inmates to pick pebbles from Wind Yard. Master Sergeant Powell followed James and told him things like "let's go horse" and "let's go boy." James went to the shady side of the building to pick rocks with white inmates. Powell ordered James back into the sun to work. James asked Powell why he was being harassed, and Powell told him that he was following the Liuetenant's orders. Powell continued to refer to James as "horse" and "boy," and ordered him from place to place to work. This caused James pain in his lower back and knees. James filed a grievance complaint No. WCI-06-439, with Warden Travis and Warden Tanner.

On May 30, 2006, James mailed grievance No. WCI-06-440 to Warden Travis against Grow and Stalder as a result of the denial of access to law library time and access to a typewriter. This grievance complaint was denied by Travis. He mailed an informal complaint to Secretary Stalder

8

complaining that Grow forced him to expose the confidential nature of his criminal and civil cases to untrained inmate counsel, denied him physical access to the law library, and hindered his ability to research.

On June 16, 2006, the Inmate Welfare Committee had a meeting with Warden Travis, Warden Tanner, Major Grow, and others about inmate access to Westlaw and legislative updates. Major Grow indicated that they did not have the resources to allow inmate access because of limited licensing, limited telephone lines, limited space, and limited funds. James claims that Secretary Stalder has allowed other DOC facilities to have inmate access to Westlaw, Lexis/Nexis, computers, and typewriters.

On June 22, 2006, Sergeant Stringer allegedly ordered James to goose pick grass along the Wind Yard fence line. As a result of sitting in the heat and humidity, James suffered aches and pains in his buttocks and back, dizziness, and headaches. He filed a grievance complaint, No. WCI-06-519, about this incident but his request was denied.

James further claims that Branch and Breland's use of his criminal history to keep him in the disciplinary cellblock caused him humiliation and emotional distress in violation of the Due Process and Equal Protection Clauses. He also claims that the on-going patterns of racial harassment, racial slurs, unreasonable work assignments, and unreasonable searches of his property and legal documents, caused him mental anguish and emotional distress creating a "hostile prison environment" and were done in retaliation for his use of the grievance system and the legal system in violation of his Eighth Amendment rights. He further alleges that defendants Tullos, Rogers, Bickham, Stalder, and Travis either ordered or had knowledge of the unconstitutional acts of their subordinates and did nothing to curb the pattern of verbal, physical, and mental abuse. James further

indicates that he informed Secretary Stalder in person of the events at RCC and Stalder's failure to take action amounted to a violation of the Due Process and Equal Protection Clauses.

James requested a jury trial and compensation for the physical, mental, and emotional distress he suffered at RCC. James was allowed to amend his complaint to reflect that he has sued each of the named defendants in their official and individual capacity.[2]

## II. **Defendants' Motion to Dismiss**

The defendants seek dismissal of James's complaint as frivolous and/or for failure to state a claim for which relief can be granted. The defendants urge that James's complaint should be dismissed as prescribed under the appropriate statute of limitations. In support of this argument, the defendants contend that all of James's claims accrued on or before August 9, 2006, by which time all of the complained of events ceased and the related administrative grievance procedures had been resolved. This, they argue, was well over one year prior to the filing of his complaint on November 1, 2007, which renders his complaint untimely filed.

Alternatively, the defendants argue that the claims can be dismissed in part for failure to state a claim because the defendants, in their official capacities, are immune from suit. They also argue that the complaint may be dismissed as malicious since James attempted to file the same claims in prior complaints, for which pauper status was denied pursuant to the "three strikes" rule of 28 U.S.C. §1915(g).[3]

---

[2]Rec. Doc. Nos. 62, 63.

[3]This would be a misreading of the concept of maliciousness. In order to be malicious, the current complaint must be repetitious litigation raising the same cause of action as a previous or pending lawsuit. *Pittman v. Moore*, 980 F.2d 994, 995 (5th Cir. 1993) (claims which duplicate claims pending in another federal action by the same plaintiff are "malicious"); *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988); *see also Wilson v. Lynaugh*, 878 F.2d 846, 849-50 (5th Cir. 1989). The referenced lawsuits were never opened because the "three strike" rule prohibited James from doing so as a pauper and his applications to proceed *in forma pauperis* were denied for that reason. Thus, he never actually filed the prior cases.

10

In further support of the motion, the defendants contend that the denial of legal supplies claim is frivolous because he was not denied pauper status because of any lack of supplies. They also contend that the remaining claims can be dismissed as frivolous, for failure to state a claim, or because the defendants are entitled to qualified immunity.

In his opposition to the motion, James alleges that the statute of limitations was tolled in his favor because of his inability to file his complaints under the "three strikes" rule. He argues that the "three strikes" rule under the Prison Litigation Reform Act ("PLRA") is in conflict with Louisiana's prescription statute and amounts to an abuse of power by Congress. He contends that he filed this lawsuit within the same year as his release from prison and that, he claims, was sufficient to meet the prescriptive deadline.

James further argues that the fact that he was a frequent filer of frivolous lawsuits does not mean that the prison officials were not violating his constitutional rights. He argues that if the prison officials had addressed his complaints about the corruption at RCC, he would not have had to file lawsuits in federal court. James again delineates his efforts to write to outside sources, including news channels, the President, the U.S. Attorney, and the FBI, but he received no assistance.

## III.   Motion to Dismiss Not Available under 28 U.S.C. § 1915

Although captioned as "Motions to Dismiss," the defendants in part seek dismissal of James's claims as frivolous pursuant to Title 28 U.S.C. § 1915.[4] As the Assistant Attorneys General enrolled in this case have been advised before, § 1915 by its very terms authorize <u>the Court</u> to *sua*

---

[4]28 U.S.C. § 1915(e)(2) provides in relevant part as follows:
Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that – . . .
(B) the action or appeal–
(i) is frivolous or malicious;
(ii) fails to state a claim on which relief may be granted; or
(iii) seeks monetary relief against a defendant who is immune from such relief.

11

*sponte* dismiss a case filed by a prisoner proceeding *in forma pauperis* upon a determination that the case is frivolous or malicious, the case fails to state a claim for which relief can be granted, or the case seeks monetary relief against an immune defendant. *Reeves v. Collins,* 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy,* 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus,* 976 F.2d 268, 269 (5th Cir. 1992). Where the Court is not convinced that a complaint, on its face, is ripe for dismissal, the complaint will survive this initial screening to allow for further development of the record. The statute does not provide a basis for counsel to urge a motion to dismiss.

## IV. Standard of Review for Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

In considering a motion to dismiss, the court must accept as true all well-pleaded facts and must draw all reasonable inferences from those allegations in the plaintiff's favor. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (recognizing a change in the standard of review). "Factual allegations must be enough to raise a right to relief above the speculative level on the ASSUMPTION THAT ALL THE allegations in the complaint are true (even if doubtful in fact)." (uppercase and parenthetical in original) *Bell Atl. Corp.*, 550 U.S. at 555-56 (quotation marks, citations, and footnote omitted). Plausible grounds "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Id*. at 556. "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id*. (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002)).

In resolving a Rule 12(b)(6) motion, the court is generally limited to considering only those allegations appearing on the face of the complaint. However, matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may be taken into account. *Chester County Intermediate Unit v. Pa. Blue Shield,* 896 F.2d 808, 812 (3d Cir. 1990). "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). While conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent the granting of a Rule 12(b) motion to dismiss, such motions are viewed with disfavor and are rarely granted. *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir. 1997).

Further, the United States Fifth Circuit Court of Appeals has held that, when reviewing *pro se* complaints, the court must employ less stringent standards, look beyond the inmate's formal complaint and consider material subsequently filed as amendments to that complaint. *Howard v. King*, 707 F.2d 215 (5th Cir. 1983); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In *Taylor v. Gibson*, 529 F.2d 709 (5th Cir.1976), the Court explained:

> It is the responsibility of the courts to be sensitive to possible abuses [in the prison systems] in order to ensure that prisoner complaints, particularly pro se complaints, are not dismissed prematurely, however unlikely the set of facts postulated. An opportunity should be provided the prisoner to develop his case at least to the point where any merit it contains is brought to light.

*Id.* at 713-14; *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

## V. James's Claims are Prescribed

In the instant motion, the defendants note that James's complaint lists several distinct incidents which may be assessed independently. However, they note that, since James argues that the claims are a continuing retaliatory pattern and even if the Court considers them as a continuing series, the claims have prescribed.

The defendants also argue that James's claims should have been filed no later than August 9, 2007, and the claims prescribed several months prior to the filing of the complaint in this case on November 1, 2007. It appears that the defendants have determined this date based in part on the dates provided by James in the Complaint and in part based on the date of the denial of pauper status in Civ. Action Nos. 06-2370 and 06-4097. The latest claim outlined by James was entitled "Absolute Denial of Indigent Legal Supplies"[5] where he alleges that the denial of legal supplies caused him to "lose" these two civil rights cases. As noted by the State, James did not "lose" these cases. Instead, pauper status was denied in these cases because of James's standing as a repeat filer of frivolous lawsuits pursuant to the "three-strikes" provision of § 1915(g).

The Court's records reflect that the pauper status in the later of these two civil actions was denied on August 8, 2006.[6] Giving James the benefit of the doubt, this would be the date his claims accrued, or the date on which he knew or should have known that he was suffering a damage from the alleged denial of legal supplies, the last in the series of claims raised in the complaint.

James does not challenge the State's suggestion that this date was the trigger for a timely filing of his complaint. Instead, James argues only that his claims did not prescribe because he was

---

[5]Rec. Doc. No. 3, p. 12.

[6]Civ. Action No. 06-4097, Rec. Doc. No. 2.

prevented from filing his complaint as a pauper while he was still in jail because of the three-strikes rule. He argues that this prohibition effectively tolled the prescriptive period until he was released from prison. He also contends that the conflict between Louisiana prescriptive period and the three-strikes rules was an abuse of congressional powers and must enure in his favor and should not serve to prevent him from exercising his right to seek redress against the defendants.

Because there is no federal statute of limitations for § 1983 claims, the district court looks to forum state's statute of limitations for personal injury claims. *Bd. of Regents of Univ. of N.Y. v. Tomanio*, 446 U.S. 478, 483 (1980) (citing 42 U.S.C. § 1988); *Wilson v. Garcia*, 471 U.S. 261, 275 (1985) (§ 1983 actions are best characterized as personal injury actions); *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998) (citing *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994)). In Louisiana, personal injury claims are governed by La. Civ. Code Art. 3492, which provides for a prescriptive period of one year from the date of injury or damage.[7] *See Jacobsen*, 133 F.3d at 319 (citing *Elzy v. Roberson*, 868 F.2d 793, 794 (5th Cir. 1989)).

For purposes of calculating the limitations period, a § 1983 cause of action accrues when the plaintiff knows or has reason to know of the injury which forms the basis of his action. *Id.*, at 319; *Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998). In the prisoner litigation context, the prescriptive period is also tolled during an inmate's efforts to timely and properly exhaust administrative remedies. *Harris v. Hegmann*, 198 F.3d 153, 158-59 (La. 1999).

Considering the foregoing facts, the causes of action, if considered as a related series of events, would have accrued at the latest on August 9, 2006, when James was denied pauper status

---

[7]Article 3492 provides that: "[d]elictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage." LA. CIV. CODE ANN. art. 3492 (2008).

in Civ. Action No. 06-4097. He had one year from that date, or until August 9, 2007, to timely file his § 1983 petition. James did not meet this deadline.

In the instant case, the Clerk of Court filed James's complaint on November 1, 2007, when his non-prisoner pauper application was granted.[8] However, the date of receipt of the complaint by the clerk of court, not the formal filing date, governs the time of filing an *in forma pauperis* complaint for limitations or prescription purposes. *Mercadel v. La. Health Care Auth.*, No. 98-1911, 1999 WL 236618, at *1 (E.D. La. Apr. 21, 1999) (citing *Martin v. Demma*, 831 F.2d 69, 71 (5th Cir. 1987)). The record reflects that the Clerk of Court received the complaint on October 29, 2007, and this is considered to be the filing date.[9] Even under this more generous consideration, James's petition deemed filed on October 29, 2007, was not timely submitted to the Court prior to the deadline on August 9, 2007.

Furthermore, James is not entitled to any tolling or forgiveness of the prescriptive period because he was subject to the restrictions of §1915(g) while he was in prison. This provision did not prevent James from filing a timely suit, it only prohibited his ability to do so as a pauper, without prepayment of the filing fee. Title 28 U.S.C. § 1915(g). James could have filed his complaint, or paid the filing fee in his two prior civil actions, in order to pursue his rights in a timely manner. *See Adepegba v. Hammons*, 103 F.3d 383, 388 (5th Cir. 1996) ("He may resume any claims dismissed under section 1915(g), if he decides to pursue them, under the fee provisions of 28 U.S.C. §§ 1911-14 applicable to everyone else.") His failure to do so, and even his financial inability to do so, does not render the three-strikes provision unconstitutional. *Soloman v. Collins*, 149 F.3d 1177,

---

[8]§1915(g) does not prevent *in forma pauperis* filings by non-prisoners.

[9]Rec. Doc. No. 3, p. 1, Tendered for Filing date.

16

1998 WL 414024, at *2 n.1 (5th Cir. June 26, 1998) (Text in Westlaw) ("It is possible that a potential litigant who is denied IFP status under this provision will not have the ability to pay the entire filing fee within the statute of limitations or, in the case of an appeal, within the time for filing an appeal, and will thereby be precluded from litigating or appealing his case on the merits. This Circuit has held the "three strike" provision of § 1915(g) constitutional in spite of this risk. *See Carson v. Johnson*, 112 F.3d 818 (5th Cir.1997)").

For the foregoing reason, the Court finds that James's claims have prescribed and the defendants' motion in this regard has merit.[10]

## VI. Recommendation

It is therefore **RECOMMENDED** that the **Motion to Dismiss (Rec. Doc. No. 60)** filed by the defendants Branch, Breland, Whaley, Broom, Kennedy, McNeese, Tanner, Brumfield, Sumrall, Miller, Erwin, Stalder, Moody, Morris, Williams, Rogers, Powell, Bickham, Tullos, Travis, Stringer, and Grow, be **GRANTED** on the issue of prescription.

It is further **RECOMMENDED** that Henry James's complaint be **DISMISSED WITH PREJUDICE** as prescribed.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

---

[10]Having determined this, the Court need not address the remaining arguments in the defendants' motion.

court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 20th day of August, 2009.

_____
**KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE**